UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DENNIS PERRYMAN,

        Plaintiff,

  v.

JAMES DEACON, STEVE FRANKIE,
LEONARD W. WILLIAMSON, LIEUTENANT
JAMES EDISON, K. HENDRICKS,

        Defendants.

_____

Case No.:2:12-CV-01234-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

    Plaintiff Dennis Perryman ("Perryman"), an inmate in the custody of the Oregon Department of Corrections (the "Department"), brings this action under 42 U.S.C. § 1983 against

defendants James Deacon, Steve Franke,[1] Leonard Williamson, James Edison, and Kimberly Hendricks, employees of the Department (collectively "Defendants"). Perryman alleges that Defendants violated his constitutional right to due process under the Fourteenth Amendment, and his Sixth Amendment right to confront witnesses, with regard to a disciplinary hearing, review and appeal. Presently before the court is Defendants' motion for summary judgment.

The court finds that Perryman did not have a constitutional right to call his victim as a witness at the hearing or to demand a pre-hearing investigation, and that Deacon did not engage in an investigation of the charges against Perryman when he contacted an officer off record to discuss the reliability of a confidential informant. Accordingly, Defendants are entitled to summary judgment.

*Background*

On December 29, 2011, defendant James Edison, Assistant Officer in Charge of the Two Rivers Correctional Facility ("Edison"), received information that an inmate had been assaulted. (Deacon Decl. dated July 9, 2013 ("Deacon Decl.) Ex. 1.) Edison investigated and obtained information from two confidential informants that Perryman had unilaterally attacked inmate Charles Yancey ("Yancey"), punching Yancey in the face and causing him to fall and hit the back of his head on a table. (Deacon Decl. Ex. 1.) Yancey was found in his cell with a black eye and a gash on the back of his head, and was transported to a medical facility for treatment. (Deacon Decl. Ex. 1.) As a result of his alleged actions, Perryman was charged with Inmate Assault I and Unauthorized Area. (Deacon Decl. Ex. 1.)

Defendant James Deacon, a Correctional Hearings Officer ("Deacon"), presided over a disciplinary hearing held on January 5, and January 9, 2012, addressing the charges against

---

[1] Perryman misspells Steve Franke's name in his caption. The court will use the correct spelling in this Findings and Recommendation.

Perryman (the "Hearing"). (Deacon Decl. Ex. 1.) Perryman requested that he be allowed to call Yancey as a witness. Deacon declined the request "because the witness would have reason not to be truthful in that if the witness did provide information it could lead to further assaultive activity on that witness." (Pl.'s Br. in Opp'n to Defs.' Summ. J. Motion ("Pl.'s Br."), Ex. 13 at 5.)[2] Similarly, Deacon denied Perryman's request for release of the confidential informant's identities or the verbatim statements of the information provided by the informants based on concern for the welfare of the informants. (Pl.'s Br. Ex. 13 at 3.)

During a recess in the Hearing, Deacon contacted the officer who prepared the confidential informant report for one of the two individuals. (Pl.'s Br. Ex. 13 at 5.) Deacon confirmed the individual had not only previously proven to be credible, but also that the information provided had been confirmed by more than one source. (Pl.'s Br. Ex. 13 at 6.) For these reasons, which were applicable to both confidential informants, Deacon found the information provided by the confidential informants to be credible. (Pl.'s Br. Ex. 13 at 6.) Based on this evidence, Deacon found Perryman guilty of the Inmate Assault I charge. (Pl.'s Br. Ex. 13 at 6.) Deacon dismissed the Unauthorized Area charge due to insufficient evidence. (Pl.'s Br. Ex. 13 at 6.) Deacon recommended Perryman serve 120 days in segregation[3] and lose segregation recreation yard privileges for twenty days. (Pl.'s Br. Ex. 13 at 6-7, Deacon Decl. Ex.

---

[2] The exhibits attached to Perryman's opposition brief are not offered through a declaration signed by Perryman providing the necessary authentication of the exhibits. While Perryman previously offered the same exhibits in a pleading signed by him, that pleading is not notarized or executed under penalty of perjury. However, Exhibit 13 is a transcript of the Hearing with an appropriate cover page and certificate signed by the word processing technician who transcribed the digitally recorded Hearing. Accordingly, Exhibit 13 has been properly authenticated and is admissible under the requirements set forth by the Ninth Circuit in *Orr v. Bank of America*, 285 F.3d 764, 774 (9th Cir. 2002).

[3] While Deacon originally recommended 120 days in segregation, Steve Franke, Department Superintendent ("Franke"), increased the time by fifty percent based on the severity of the injuries to Yancey and Perryman's assault history. (Deacon Decl. Ex. 3 at 2.)

1 at 2.) Deacon reserved the right to reopen the Hearing to address restitution. (Pl.'s Br. Ex. 13 at 7.)

On April 25, 2012, Deacon reconvened the Hearing and recommended Perryman be assessed restitution in the amount of $2,108.67, representing the cost of medical care provided to Yancey as a result of Perryman's actions. (Deacon Decl. Ex. 2.) Perryman's request for an itemized copy of Yancey's medical care was denied by defendant Kimberly Hendricks, Hearings Administrator. Hendricks represented that an inmate's medical information is confidential and protected from disclosure for security reasons and that the Department is prohibited from disclosing that information under HIPAA. (Hendrick Decl. ¶¶ 6-7.) Perryman pursued various reviews of the Hearing. Defendant Leonard Williamson, Inspector General of the Department ("Williamson"), reviewed Perryman's case and found that the Hearing was in substantial compliance with the rules, the findings were based on substantial evidence, and the sanctions were appropriate. (Pl.'s Br. Ex. 6.)[4]

*Legal Standard*

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2012). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id*. at 324. A nonmoving party cannot

---

[4] Exhibit 6 is a letter signed by Williamson on Department stationary addressed to Perryman. The letter is self-authenticating and, therefore, properly considered by the court.

defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. Fed. R. Civ. P. 56(c) (2012). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

*Discussion*

Perryman alleges that Defendants violated his due process rights by: 1) not granting his request for an investigation; 2) not allowing him to call and examine the victim; and 3) going off-record to obtain additional evidence, thereby preventing Perryman from presenting a viable

defense at the Hearing.[5]  Perryman also asserts that Franke, Hendricks, and Williamson became responsible for the due process violations by failing to correct them on review or appeal. Defendants move for summary judgment arguing that their conduct did not result in a violation of Perryman's constitutional rights to due process.  Alternatively, Defendants assert they are entitled to qualified immunity for their actions.

"Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation." *Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).  Of course, "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen," and although prisoners still retain Constitutional protections of religious freedom, access to the court, equal protection, and substantive due process, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 555-56.  For example, unlike a defendant's silence in a criminal proceeding, a prisoner's silence at a disciplinary hearing may be used against him.  *Baxler v. Palmigiano*, 425 U.S. 308, 316-18 (1976). Similarly, prisoners "do not 'have a right to either retained or appointed counsel in disciplinary hearings.' " *Id*. at 315 (quoting *Wolff*, 418 U.S. at 570).

In *Wolff*, the Supreme Court discussed the due process requirements of a prison disciplinary hearing.  First, prison officials must provide the prisoner with written notice at least twenty-four hours before the hearing.  *Wolff*, 418 U.S. at 564.  This notice must include the charges against the inmate, a written description of the evidence on which the factfinder relies,

---

[5] In his complaint, Perryman also asserts that his due process rights were violated when neither Deacon nor Hendricks provided him a copy of Yancey's medical invoices.  It is clear from Perryman's opposition brief that he is abandoning this claim.

and the reason for taking disciplinary action. *Id*. Second, prison officials should allow the prisoner "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id*. at 566. Third, if the prisoner is illiterate, or if the complexity of the case makes comprehension unlikely, prison officials should allow the prisoner to "seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Id*. at 570.

I.  Call and Examine the Victim

Perryman asserts that his procedural due process rights were violated when his request to call Yancey as a witness at the Hearing was denied. In a disciplinary hearing, order and safety are serious concerns where a charge against an inmate for violating a jail's disciplinary rules necessarily implicates behavior in jail. Accordingly, prison officials are afforded flexibility with respect to inmates requests for witnesses and evidence. *Wolff*, 418 U.S. at 566-69. As noted above, an accused is allowed to call witnesses only "when permitting [their appearance] will not be unduly hazardous to institutional safety or correctional goals." *Id*. at 566. A hearings officer may decline an inmate's request to call a witness "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id*.

At the Hearing, Deacon denied Perryman's request to call Yancey as a witness based on his concern for Yancey's safety and the chance that Yancey might not be truthful to protect himself from future reprisals by Perryman. Deacon later explained that Yancey's "proffered testimony would not constitute a defense to the charges, nor substantially mitigate the violations listed." (Deacon Decl. Ex. 1.) In other words, the testimony was not necessary to the proper resolution of the matters at hand. Deacon correctly exercised his discretion by making an

individualized analysis of the potential hazards of calling Yancey as witness. Accordingly, Deacon did not violate Perryman's due process rights by denying his request to call his victim as a witness at the Hearing.

II.  Off-Record Telephone Call

Perryman argues that Deacon violated OR. ADMIN. R. 291-105-0041 by acting as an investigator when he went off record to obtain additional support for finding a confidential informant reliable. OR. ADMIN. R. 291-105-0041 provides that:

> The adjudicator shall not have been a witness to the event, have personal knowledge of any material, disputed fact relating to the case or have participated in the case as a charging or investigating officer.

There is no dispute that Deacon contacted a prison official during the Hearing. In fact, Deacon explained to Perryman at the Hearing that he made the call to obtain information not initially provided to him but necessary to support the official's statement that a confidential informant was reliable.

A hearings officer relying on the statement of a confidential informant must make a finding that the confidential informant is reliable. *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1981). Reliability may be supported by the oath of the collecting officer with regard to the truthfulness of the statement, corroborating testimony, the firsthand knowledge of the hearings officer with regard to the credibility of the confidential informant, or an *in camera* review of the documentation supporting credibility. *Id*. at 186-87. "Proof that an informant previously supplied reliable information is sufficient." *Id*. at 187.

One of the confidential informant statements provided to Deacon was supported only by a statement that the informant had previously provided truthful confidential information, with no proof to support that statement. Deacon contacted the officer who prepared the statement to

obtain such proof. The officer represented that the confidential informant's testimony had been corroborated with testimony from another source, providing the requisite indicia of reliability.

Deacon did not place himself in an investigative capacity merely by requesting information on a confidential informant's credibility. He did not speak with the informant or any other witness about the specifics of the assault. He merely obtained information about a confidential informant's trustworthiness. Deacon's off-record telephone call was not an "investigation" and did not violate Perryman's due process rights.

III. Request for Investigation

Perryman contends he requested an investigation of the charges against him at the start of the Hearing and that Deacon's failure to allow such investigation violated his due process rights. Prison officials are not required to conduct investigations at the request of an inmate. *Piatt v. Nooth,* No. 3:10-CV–00932-BR, 2014 WL 201486, at *8 (D. Or. Jan. 17, 2014) ("*Wolff* 'does not require prison officials to conduct an investigation in a certain manner or pursuant to the request of an inmate.' ")(citations omitted). Perryman was not entitled to an investigation. Accordingly, Deacon did not violate Perryman's due process rights when he did not allow the requested investigation.

IV. Franke, Hendricks, and Williamson

Perryman asserts that Franke, Hendricks, and Williamson are liable for the alleged due process violations based on their failure to correct them on review or appeal. The court has found that Perryman has failed to establish any violation of his due process rights during the Hearing. Accordingly, Franke, Hendricks, and Williamson did not have any due process violations to correct.

V.  Qualified Immunity

Defendants alternatively move for summary judgment asserting they are entitled to qualified immunity on Perryman's claims.  The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Therefore, public officials are generally immune from civil liability unless their actions violated clearly established law because "a reasonably competent public official should know the law governing his conduct."  *Id*.  In order to determine whether the doctrine of qualified immunity applies to individual defendants, the court must decide whether the plaintiff has shown that a constitutional or statutory right has been violated and whether the right at issue was "clearly established" at the time of the alleged violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The court has found Perryman was provided the constitutional due process guarantees afforded him under *Wolff*.  Accordingly, Defendants are entitled to summary judgment as a matter of law and their alternative argument need not be addressed.  However, for the sake of the record, the court also finds that Defendants are entitled to qualified immunity because they did not violate Perryman's clearly established constitutional rights.

*Conclusion*

Defendants' motion (#45) for summary judgment should be GRANTED.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review.  Objections, if any, are due **February 18, 2014**.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 31st day of January, 2014.

              /s/ John V. Acosta
              JOHN V. ACOSTA
          United States Magistrate Judge